United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL THOMPSON,
Plaintiff,

v.

DUBLIN POLICE SERVICES, et al.,
Defendants.

Case No. 24-cv-00475-ASK

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 53, 61, 70

California law permits limited residential marijuana cultivation under certain circumstances. In this civil rights action, Plaintiff Michael Thompson alleges, among other things, that Defendant Detective Brandon obtained a search warrant by lying about the number and location of certain marijuana plants, thereby resulting in the deprivation of Mr. Thompson's constitutional rights. Dkt. 1.[1] Defendants moved for summary judgment. Dkt. 53.

Having considered the briefing, the Court **GRANTS** Mr. Thompson's motions to supplement the record without oral argument. *See* N.D. Cal. Civ. L. R. 7-1(b). On summary judgment, the Court **GRANTS** Defendants' motion as to Mr. Thompson's claims against the Entity Defendants, Second Amendment claims, Fourth Amendment *Monell* claim, Fourth Amendment wrongful arrest claim, Fifth Amendment claim, Fourteenth Amendment *Devereaux* claim for falsification of evidence, and negligence claim.

By contrast, summary judgment is **DENIED** as to Mr. Thompson's Fourth Amendment claim for unlawful seizure of his firearms pursuant to a warrant that was obtained through judicial deception because Mr. Thompson has presented a triable issue as to whether Detective Brandon

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

misrepresented material facts in his affidavit to the search warrant application. Likewise, the Court **DENIES** Defendants' motion for summary judgment as to Mr. Thompson's intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages claims.

## I. BACKGROUND

Plaintiff Michael Thompson's brother, Marcus Thompson, declares that he and Plaintiff Thompson planted six marijuana plants "in soil in small plastic containers on the side of the house" at 11720 Casa Linda Court in Dublin, California, in 2018. Dkt. 70-1 at 39 ¶ 4. "[S]ometime in late April or early May 2018," the Thompson brothers pulled up three of those plants and left them to wilt. *Id*. 39 ¶ 5. "The other three were healthy female plants" that the brothers took out of the small plastic containers, transplanted to three large burlap soil containers, and grew to maturity inside a greenhouse in the backyard of 11720 Casa Linda Court. *Id*. at 39 ¶ 5, 41 ¶ 3.

On October 31, 2018, Detective Scott Brandon of Dublin Police Services authored an affidavit to obtain a search warrant for 11720 Casa Linda Court. Dkt. 53-2. In the affidavit, Detective Brandon swore:

> In April of 2018, The Dublin Police Services Special investigation Unit received information from a citizen informant regarding the illegal outdoor cultivation of Marijuana at 11720 Casa Linda Court in the City of Dublin. The Marijuana was being grown in plain view within the property lines of 11720 Casa Linda Court and was reported as a public nuisance due to the strong odor the Marijuana plants were emitting.
>
> During the month of April, 2018, Detective M. Moncada and I observed the backyard of 11720 Casa Linda Court from an adjacent piece of property. **We could clearly see the backyard of 11720 Casa Linda Court which had about 20-30 Marijuana plants growing on the east side of the residence under a clear enclosed greenhouse structure.**
>
> On Thursday June 21, 2018, Detective Sergeant J. White and Detective L. Mangano went to 11720 Casa Linda Court and contacted two residents who were later identified as Marcus Thompson (/1979) and Michael Thompson (/1981) who both lived at that residence. When Marcus and Michael were contacted Detective Sergeant White explained to them they were not allowed to grow Marijuana outdoors in the city of Dublin and requested they take the plants down within three days, June 23, 2018. Marcus acknowledged the Marijuana plants were in the backyard of the residence and agreed to comply with Dublin Municipal Codes that prohibit growing Marijuana outdoors in



United States District Court
Northern District of California

> the City of Dublin. In addition, Marcus was provided a letter that referenced what Detective Sergeant White and Marcus had spoke about.
>
> On Friday October 26, 2018, Detective Sergeant and I went to 11720 Casa Linda Court to ascertain of the Marijuana plants had been taken down. Upon walking up to the front of the residence I could smell the strong odor of Marijuana emanating from the area of the backyard. **I looked over the side gate on the west side of the residence and could see two to three more Marijuana plants being grown outdoors within the property lines of 11720 Casa Linda Court. In addition, Detective Sergeant White could see the clear outdoor green house still had about 20-30 Marijuana plants inside of it.** Detective Sergeant White knocked on the front door of the residence several times and no one answered the door. It was apparent that someone was home but they were refusing to answer the front door. While attempting to contact the residents at 11720 Casa Linda Court my Axon body worn camera was activated (X81235334) as well as Detective Sergeant White's Axon body worn camera (X81140091).

*Id*. at 16 (emphasis added).

In the warrant application, the Dublin police claimed to be investigating possible violations of Dublin Municipal Code §§ 5.58.030 and 5.58.080. Dkt. 53-2 at 16-17. Dublin Municipal Code § 5.58.030 prohibits "medical marijuana cultivation in or upon any premises or property in the city." Dublin Municipal Code § 5.58.080 prohibits "outdoor nonmedical marijuana cultivation in or upon any premises or property in the city." According to the Dublin City Clerk's Office, both provisions were adopted in February and October of 2016, respectively.

In November 2016, the California Legislature made it lawful for "persons 21 years of age or older to . . . possess, plant, cultivate, harvest, dry, or process not more than six living cannabis plants and possess the cannabis produced by the plants[.]" Cal. Health & Safety Code § 11362.1(a)(3). Since then, California law has provided that legal cannabis is "not contraband nor subject to seizure," and that legal cultivation shall not "constitute the basis for detention, search, or arrest." Cal. Health & Safety Code § 11362.1(c). California law further provides that municipalities "shall not completely prohibit" legal cannabis cultivation "inside a private residence, or inside an accessory structure to a private residence located upon the grounds of a private residence that is fully enclosed and secure." Cal. Health & Safety Code § 11362.2(b)(2). However, California law allows localities to "completely prohibit" cannabis cultivation "outdoors upon the grounds of a private residence." Cal. Health & Safety Code § 11362.2(b)(3).

The warrant application made no reference to California's law on legal cannabis cultivation. Within ten minutes of the application's submission, the Superior Court judge issued the warrant. Dkt. 53-2 at 12.

On November 8, 2018, Sergeant White and Detectives Brandon, Moncada, and Mangano executed the search warrant. Dkt. 53-3 ¶ 9. From the greenhouse, the officers seized three marijuana plants approximately 6.5 feet tall. *Id.* ¶ 13. From the garage, the officers seized marijuana branches, buds, and bud trimmings, as well as 16 serialized firearms, firearms components, and assorted ammunition. *Id.* ¶ 12.

On January 15, 2019, the Alameda County District Attorney's Office charged Mr. Thompson with felony possession of an assault weapon in violation of California Penal Code § 30605(a) and misdemeanor cultivation of marijuana in violation of California Health and Safety Code § 11358(c). Dkt. 53-7 at 5.[2] On December 13, 2022, the District Attorney dismissed the charges against Mr. Thompson for insufficient evidence. *Id.* at 11.

## II. DISCUSSION

The Court addresses Mr. Thompson's motions to supplement the summary judgment record (Dkts. 61 & 70) before deciding Defendants' summary judgment motion (Dkt. 53).

### A. Mr. Thompson's Motions as to the Summary Judgment Record

At the summary judgment hearing on April 8, 2026, the Court permitted Mr. Thompson to move to supplement the record to submit affirmative evidence regarding: (1) the number of plants growing inside the greenhouse structure at the property in April 2018, (2) the number of plants growing inside the greenhouse structure at the property on October 26, 2018, and (3) the number of plants growing on the property but outside of the greenhouse on October 26, 2018. Mr. Thompson so moved. Dkt. No. 70; *see also* Dkt. 61 (Mr. Thompson's motion to augment the record with deposition testimony that he referenced but failed to attach to his opposition to

[2] While Defendants request that the Court take judicial notice of the charges against Mr. Thompson and their dismissal, that seems unnecessary on a summary judgment motion. Instead, the Court interprets the request for judicial notice as an attorney declaration attaching a true and correct copy of these governmental documents. That Alameda County charged Mr. Thompson and later dropped those charges is not in dispute.



United States District Court
Northern District of California

Defendants' motion for summary judgment).

On summary judgment, the Court may give a party the opportunity to address a fact that it failed to oppose. Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . give an opportunity to properly support or address the fact[.]"); *see also Netlist Inc. v. Samsung Elecs. Co.*, No. 820-CV-00993, 2024 WL 943951, at *3 (C.D. Cal. Feb. 6, 2024) ("District courts have discretion to permit parties to submit supplemental materials in support of or in opposition to a motion for summary judgment." (cleaned up)). "In deciding whether to grant a motion to supplement the record, district courts consider whether the evidence the party is seeking to admit is relevant and also consider whether the motion is made in good faith and whether allowing supplementation would unfairly prejudice the non-moving party." *Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL, 2020 WL 1904638, at *2 (D. Ariz. Apr. 17, 2020). Whether to grant a motion to supplement is within a district court's discretion. *Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015).

Mr. Thompson seeks to add relevant deposition testimony and sworn facts to the summary judgment record to address the Court's questions and Defendants' arguments. The good-faith supplementation of deposition transcripts will not unduly prejudice Defendants, who attached different excerpts of the same deposition transcripts to their motion for summary judgment. *See* Dkt. 53. Nor can Defendants claim unfair surprise about Plaintiffs' reliance on deposition testimony provided in the presence of Defendants' counsel. As for the new, very brief declarations submitted by Plaintiff Michael Thompson and his brother Marcus Thompson, these declarations merely summarize facts to which they testified at deposition. Defendants suffer no unfair prejudice by the inclusion of these transcripts and declarations in the summary judgment record. And based on the colloquy with Plaintiffs' counsel at the summary judgment hearing, the Court finds the supplementation to be in good faith. Accordingly, the Court **GRANTS** Mr. Thompson's motion to augment and motion to supplement the summary judgment record.

### B. Defendants' Motion for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

United States District Court
Northern District of California

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* In determining whether a dispute is genuine, the Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

As the moving party, Defendants "bear[] the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Where Defendants bear the burden of proof on an issue, they must affirmatively demonstrate that no reasonable trier of fact could find other than for Defendants. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). By contrast, where Mr. Thompson bears the burden of proof on an issue, Defendants "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Defendants meet their initial burden, then Mr. Thompson must set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (cleaned up).

### 1. Constitutional Claims

Mr. Thompson brings Second Amendment claims; Fourth Amendment *Monell*, wrongful arrest, and seizure claims; a Fifth Amendment claim; and a Fourteenth Amendment due process claim alleging falsification of evidence under *Devereaux*. Because Mr. Thompson failed to oppose summary judgment of his Fifth Amendment claim, Dkt. 59 at 15, this claim is **DISMISSED with**

United States District Court
Northern District of California

**prejudice** as abandoned. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (claims not raised in opposition to summary judgment are deemed abandoned).

**a. Second Amendment**

Mr. Thompson's Second Amendment claim against Detective Brandon concerns the seizure and retention of Mr. Thompson's firearms. Dkt. 59 at 15. As to the seizure, Mr. Thompson's claim fails because Mr. Thompson's firearms were seized during a search executed pursuant to a facially valid warrant. *See Rocha v. Cnty. of Tulare, Cal.*, 627 F. App'x 623, 624 (9th Cir. 2015) (affirming dismissal of Second Amendment claim based on warrant-backed seizure of firearm); *Milner v. Dodd*, No. 25-CV-03350-JSC, 2026 WL 555494, at *4 (N.D. Cal. Feb. 27, 2026), *motion for relief from judgment denied*, No. 25-CV-03350-JSC, 2026 WL 1078574 (N.D. Cal. Apr. 21, 2026) ("Searches pursuant to a warrant issued by a neutral magistrate are presumed to be reasonable, and the warrant is presumed to be valid." (citing *United States v. Leon*, 468 U.S. 897, 913-14 (1984)); *DeMaria v. Yolo Cnty. Sheriff's Off.*, No. 2:23-CV-01798, 2024 WL 3821876, at *8 (E.D. Cal. Aug. 14, 2024) ("[S]everal federal courts have held that a plaintiff cannot pursue a Second Amendment claim about guns seized by officers who are executing a facially valid warrant."); *Crook v. San Bernardino Cnty. Sheriff's Dep't*, No. 5:22-CV-00010-JVS-SP, 2023 WL 8100579, at *6 (C.D. Cal. Sept. 30, 2023), *report and recommendation adopted*, No. 5:22-CV-00010-JVS-SP, 2023 WL 8091857 (C.D. Cal. Nov. 21, 2023) ("[T]he seizure of firearms pursuant to a Fourth Amendment search does not necessarily constitute a Second Amendment violation."); *Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure . . . is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such."); *Kortlander v. Cornell*, 816 F. Supp. 2d 982, 993 (D. Mont. 2011) (finding no Second Amendment violation where firearms were seized during the execution of a search warrant). Instead of challenging the ***facial*** validity of Detective Brandon's affidavit, Mr. Thompson attacks the underlying truth of the facts included in the search warrant application to establish probable cause. Because "a plaintiff cannot pursue a

Second Amendment claim about guns seized by officers who are executing a facially valid warrant" and "no allegations show the warrant was invalid on its face," Mr. Thompson's Second Amendment claim is precluded. *DeMaria*, 2024 WL 3821876, at *8 (dismissing Second Amendment claim regarding guns seized during execution of facially valid warrant despite plausible judicial deception theory).

As to the retention of the firearms by the government,

> California law requires an individual whose firearms have been confiscated by law enforcement to submit an online application to the DOJ, and for the DOJ to complete an eligibility check of the applicant thereafter. Law enforcement is prohibited by law from releasing firearms until presented with the DOJ's determination that the applicant is eligible to possess the firearms.

*Brandstetter v. City of Riverside*, No. 5:20-CV-01866, 2023 WL 5493817, at *5 (C.D. Cal. Aug. 21, 2023), *aff'd*, No. 23-55739, 2025 WL 66045 (9th Cir. Jan. 10, 2025) (cleaned up). Mr. Thompson does not raise a facial challenge to the state regulatory scheme for confiscated weapons. Nor has he demonstrated exhaustion of his remedies under California law to obtain the lawful release of his firearms. And, to the extent that he did adequately exhaust his remedies, it is unclear on this record whether the Entity Defendants—as opposed to unnamed state-level actors—were responsible for the failure to release Mr. Thompson's firearms. So, Mr. Thompson's retention claim fails too. Accordingly, summary judgment is **GRANTED** as to Mr. Thompson's Second Amendment claims.

**b. Fourth Amendment**

Mr. Thompson asserts Fourth Amendment *Monell*, wrongful arrest, and unlawful seizure claims against Defendants.

***i. Monell***

Defendants Alameda County Sheriffs' Department and Dublin Police Services ("Entity Defendants") move for summary judgment on Mr. Thompson's § 1983 claims because "there is no vicarious liability for municipalities under 42 U.S.C. § 1983" and Mr. Thompson "did not allege *Monell*." Dkt. 53 at 19. Because Mr. Thompson failed to allege a *Monell* claim—either expressly or by identifying a challenged policy or practice—in his complaint, this claim is **DISMISSED**

United States District Court
Northern District of California

**with prejudice**. *See Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d 1090, 1099 (N.D. Cal. 2014) ("A plaintiff cannot raise a claim for the first time in response to a motion for summary judgment.").

**ii. Wrongful Arrest**

Mr. Thompson brings a Fourth Amendment claim for wrongful arrest against Detective Brandon. "An officer's liability under section 1983 is predicated on his integral participation in the alleged violation." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (cleaned up). "[L]iability may attach if the officer has some fundamental involvement in the conduct that allegedly caused the violation." *Id.* (cleaned up).

This claim fails because Mr. Thompson has not met his burden to establish that Detective Brandon was an integral participant in Mr. Thompson's arrest. The Dublin Police arrested Mr. Thompson pursuant to an arrest warrant that was sought and issued two months after effectuating the at-issue search. Mr. Thompson has not advanced any evidence that Detective Brandon was present for Mr. Thompson's arrest, instructed officers to arrest Mr. Thompson, or was even consulted prior to Mr. Thompson's arrest. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (no integral participation where the detective was not present at the plaintiff's arrest, did not instruct other officers to arrest the plaintiff, and was not consulted prior to the plaintiff's arrest). The warrant application for Mr. Thompson's arrest indicates that Detective Brandon neither authored nor reviewed the supporting declaration. Dkt. 53-7 at 5-9. Indeed, the arrest warrant application does not contain any of Detective Brandon's alleged misstatements. *See id*. Mr. Thompson fails to advance any authority for the proposition that alleged misstatements in a search warrant application create liability for a subsequent arrest based on seizures made during the execution of a facially valid warrant. "Thus, there is no evidence of 'integral participation' by Detective [Brandon] in the alleged constitutional violation." *Torres*, 548 F.3d at 1206.

Accordingly, summary judgment is **GRANTED** as to Mr. Thompson's Fourth Amendment claim against Detective Brandon for wrongful arrest.

**iii. Unlawful Seizure**

Mr. Thompson alleges that Defendants unlawfully seized his firearms from a safe stored in

the garage of 11720 Casa Linda Court when the officers executed a search warrant that Detective Brandon obtained through judicial deception. According to Mr. Thompson, 11720 Casa Linda Court was his mother's house. Dkt. 53-1 at 98:10-13. Marcus Thompson lived there in 2018. Dkt. No. 70-1 at 39 ¶ 2. Mr. Thompson lived elsewhere, though he visited his "mother's house numerous times in 2018, sometimes sleeping over[.]" Dkt. 70-1 at 41 ¶ 4. Mr. Thompson had stored his firearms in his mother's garage while moving from one residence to another. Dkt. 53-1 at 113:23-25.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness is the ultimate standard under the Fourth Amendment. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992). Determining whether a seizure is reasonable requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

"[A] seizure of property involves some meaningful interference by the government with an individual's possessory interests in that property." *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (cleaned up). "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Soldal*, 506 U.S. at 68. Ordinarily, a seizure of personal property is *per se* unreasonable within the meaning of the Fourth Amendment unless carried out pursuant to a warrant issued upon probable cause particularly describing the items to be seized. *Place*, 462 U.S. at 701.

Though Mr. Thompson does not assert a reasonable expectation of privacy in his mother's garage, he does demonstrate a meaningful interference with his possessory interest in his firearms. *See Soldal*, 506 U.S. at 66 ("[T]he absence of a privacy interest notwithstanding, a seizure of [an] article would obviously invade the owner's possessory interest."). He insists that Defendants' seizure of his firearms was unreasonable because it was executed pursuant to a warrant that Detective Brandon obtained via judicial deception.

To state a Fourth Amendment judicial deception claim, Mr. Thompson must show that

United States District Court
Northern District of California

Detective Brandon "made deliberately false statements or recklessly disregarded the truth in the affidavit and that the falsifications were material to the finding of probable cause." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). For Mr. Thompson's judicial deception claim to survive summary judgment and overcome qualified immunity, he must also "establish that, without the dishonestly included or omitted information," the search warrant would not have issued. *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995), *as amended on denial of reh'g* (Dec. 5, 1995); *see also Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011) (explaining that, for a judicial deception claim to survive summary judgment, the plaintiff "must 1) make a substantial showing of the officers' deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the searches and arrest would not have occurred." (cleaned up)). "Put another way, [Mr. Thompson] must establish that the remaining information in the affidavit is insufficient to establish probable cause." *Hervey*, 65 F.3d at 789.

Because legal cannabis cultivation cannot constitute the basis for a search under California law, the question of probable cause depends on the number and the location of the marijuana plants that the Dublin Police swore to have seen in the Thompsons' backyard. In the search warrant application, Detective Brandon swore that he and Detective Moncada "could clearly see the backyard of 11720 Casa Linda Court which had about 20-30 Marijuana plants growing on the east side of the residence under a clear enclosed greenhouse structure." Dkt. 53-2 at 16. Detective Brandon further swore that he and Detective Sargeant White observed in October 2018 that the greenhouse in the Thompsons' backyard "still had about 20-30 Marijuana plants inside of it." Dkt. 53-2 at 16. These statements are material to and sufficiently support a probable cause finding that the Thompsons' cannabis cultivation at 11720 Casa Linda Court exceeded the legal limit of six plants in 2018.

But even without Detective Brandon's statements about the marijuana plants inside of the greenhouse, the affidavit's remaining information is still sufficient to establish probable cause. This is because Detective Brandon's affidavit attests that, in October 2018, he "could see two to three more Marijuana plants **being grown outdoors** within the property lines of 11720 Casa Linda Court." Dkt. 53-2 at 16 (emphasis added). The Dublin Municipal Code prohibits the outdoor

cultivation of marijuana. Dublin, Cal. Mun. Code § 5.58.030; *see also* Cal. Health & Safety Code § 11362.2(b)(3) (allowing localities to "completely prohibit" cannabis cultivation "outdoors upon the grounds of a private residence."). So, Detective Brandon's observation of the outdoor cultivation, standing alone, sufficiently supports a probable cause finding of an illegal marijuana grow.

However, a dispute of material fact exists as to the falsity—including the possibly intentional falsity—of Detective Brandon's statement about seeing marijuana plants growing outside at 11720 Casa Linda Court in October 2018. Marcus Thompson swears that, "[a]fter May of 2018, police could not have observed more than 3 plants growing on the property because I cared for the plants almost daily and never had more than 3 plants growing in the greenhouse for the 2018 season." Dkt. No. 70-1 at 39 ¶ 7. If there were only three marijuana plants growing on the property from May to December 2018, and those three plants were housed in the greenhouse, then Detective Brandon could not have seen "two to three more Marijuana plants being grown outdoors" on top of the "20-30 Marijuana plants inside" the greenhouse in October 2018. Dkt. 53-2 at 16. Indeed, when Sergeant White and Detectives Brandon, Moncada, and Mangano executed the search warrant on the property in November 2018, the officers only found three marijuana plants in the greenhouse—there is no evidence that they found any plants growing openly outside on the property. Dkt. 53-3 ¶¶ 9, 13. Based on Marcus Thompson's declaration and the apparent lack of marijuana plants growing outside in November 2018—in other words, based on the stark difference between the Thompsons' version of events and the version of events described in the search warrant affidavit—a reasonable jury could find that Detective Brandon lied in the affidavit about seeing "two to three more Marijuana plants being grown outdoors[.]" Dkt. 53-2 at 16.

Excising Detective Brandon's observation of the outdoor grow and statements about the number of plants in the greenhouse, the affidavit's remaining information is insufficient to establish probable cause of illegal marijuana cultivation. California law permits the cultivation of "not more than six living cannabis plants" "inside an accessory structure to a private residence located upon the grounds of a private residence that is fully enclosed and secure." Cal. Health & Safety Code § 11362.1(a)(3); Cal. Health & Safety Code § 11362.2(b)(2). Without Detective

Brandon's statements about the number of greenhouse plants, the affidavit provides no facts to support the belief that the greenhouse grow exceeded legal limits. And without the October 2018 observation of plants growing outside, there is nothing to support the assumption that the marijuana growing on the property violated Dublin's prohibition on outdoor cultivation.

But a separate potential issue remains. Defendants characterize all of the marijuana plants in the Thompsons' backyard—including those in the greenhouse—as being illegally grown outdoors because the greenhouse was not a "fully enclosed and secure structure" under Dublin law. Dkts. 60 at 9-10; 77 at 5-6. Under California law, "a city, county, or city and county **shall not completely prohibit** persons engaging in the" cultivation of six or fewer cannabis plants "inside a private residence, or inside an accessory structure to a private residence located upon the grounds of a private residence that is fully enclosed and secure." Cal. Health & Safety Code § 11362.2(2) (emphasis added). Rather than completely prohibiting indoor marijuana cultivation, Dublin law narrowly defines "indoors" as "a fully enclosed and secure structure or within a private residence[,]" *see* Dublin Municipal Code § 5.58.010(D), and further defines "fully enclosed and secure structure" as

> a space within a building that complies with the applicable building code, and has a complete roof enclosure supported by connecting walls extending from the ground to the roof, a foundation, slab or equivalent base to which the floor is secured by bolts or similar attachments, is secure against unauthorized entry, and is accessible only through one (1) or more lockable doors. Walls and roof must be constructed of solid materials that cannot be easily broken through, and must be constructed with nontransparent material.

Dublin Municipal Code § 5.58.010(C). Defendants claim that the Thompsons' greenhouse failed to meet these specifications because "[i]t had an open, exposed roof and was not constructed of nontransparent materials[,]" as demonstrated by Detective Brandon's testimony that he "observed marijuana popping out of the top of the greenhouse both in April and October." Dkt. 60 at 10; *see also* Dkt. 53 at 12.

Assuming that Dublin Municipal Code § 5.58.080 is fully valid and enforceable, material factual disputes preclude summary judgment on the issue of whether the Thompsons' marijuana cultivation occurred indoors or outdoors. Defendants cannot argue that the search warrant would

have issued anyway due to the "open, exposed roof" of the greenhouse, given that the search warrant affidavit describes the greenhouse as "enclosed." Dkt. 53-2 at 16. As for the transparency or nontransparency of the greenhouse, Detective Brandon testified that its walls were opaque or "opaqueish"—thereby creating a factual dispute. Dkt. 53-1 at 27:21-24 ("[T]he sides of it were opaqueish, so it wasn't a clear view from the side. It was clear on the top, and I could see marijuana popping out of the top."); 28:12-14 ("[T]he sides of the grow house were like – they were opaque. So it wasn't clearly – I couldn't see directly into it."); 42:22-24 ("Again, it was opaque. So I couldn't' see in it from certain angles."); 43:3-6 ("[T]he top of it had what I recall to have clear panels, and I could see the marijuana growing out of it, but the sides were opaque."). To the extent that Defendants seek to argue that Detective Brandon has conceded only that the sides were "opaque," photographs in the record show that the sides and top of the greenhouse are constructed of a single continuous length of material. *See* Dkts. 53-4 at 44; 53-5 at 10. A reasonable jury could therefore conclude that if the side is opaque, the entirety of the greenhouse is opaque. Accordingly, a genuine dispute exists as to whether the Thompsons' greenhouse qualified as a "fully enclosed and secure structure" under Dublin law.

But even if the record unambiguously demonstrated that the greenhouse failed to qualify as a "fully enclosed and secure structure" under the Dublin Municipal Code, Defendants are still not entitled to summary judgment. This is because a factual dispute would remain as to whether a search warrant of equivalent ***scope*** would have issued, absent the allegedly false statements about the number and location of the marijuana plants. In other words, if the search warrant had stated that there were only three marijuana plants in the greenhouse, but that the greenhouse failed to meet Dublin Municipal Code § 5.58.010(C)'s requirements for a "fully enclosed and secure structure," it is not at all clear that probable cause would have existed to search the Thompson residence, where Mr. Thompson's firearms were located. Indeed, the portions of the warrant affidavit that call for the search of the Thompsons' residence for firearms are premised on allegations of a large-scale illegal marijuana grow, not a small, three-plant grow in a supposedly noncompliant accessory structure:

> Based on my training and experience and from investigating outdoor

> Marijuana cultivations, I know that marijuana is a valuable cash crop. Persons will manufacture and distribute marijuana to obtain substantial proceeds from their illegal enterprise. . . . [T]hey will protect their controlled substances, illegally acquired wealth and their persons by the possession and possible use of firearms. All of these items are located within the premises, vehicles or locations owned or controlled by the perpetrator, outbuildings, the curtilage associated with the premises, and upon the persons of those perpetrators located upon the premises during the execution of a search warrant are of evidentiary value.
>
> [. . .]
>
> Based on my training and experience, I know that it is common among persons who unlawfully cultivate and sell Marijuana to arm themselves with firearms, to defend themselves against theft from buyers and violent confrontations with rival drug dealers. I also know that persons who unlawfully cultivate and sell Marijuana have used firearms against law enforcement officers during service of search warrants and arrest situations. I have seized numerous sophisticated weapons from persons later convicted of unlawful cultivation and sales of Marijuana, which included handguns, shotguns, and assault rifles. I therefore request that a search for any such weapons be included in this warrant, as evidence of unlawful cultivation and sales of Marijuana.

Dkt. 53-2 at 17-19. On this record, there is a significant factual issue as to whether the above statements, premised on "violent confrontations with rival drug dealers," apply at all to an otherwise legal three-plant grow that complies with California law governing residential cultivation, but for technical aspects of the structure at issue. Put another way, such statements in the affidavit that support the search of the residence for firearms are ***not*** premised on the characteristics of the greenhouse. Accordingly, the alleged deficiencies in the nature of the greenhouse are insufficient to justify granting summary judgment.

In sum, Mr. Thompson has demonstrated the existence of a factual dispute as to whether Detective Brandon—either deliberately or with reckless disregard for the truth—misrepresented the number and location of the marijuana plants in his search warrant affidavit. Mr. Thompson has likewise shown a factual dispute as to whether the search warrant would have issued "without the dishonestly included" information because "the remaining information in the affidavit is insufficient to establish probable cause." *Hervey*, 65 F.3d at 789. Mr. Thompson has thus sufficiently established his judicial deception claim against Detective Brandon, who is not entitled to qualified immunity. *See Chism*, 661 F.3d at 393 ("[G]overnmental employees are not entitled to

qualified immunity on judicial deception claims. . . . [S]ummary judgment on the ground of qualified immunity is not appropriate once a plaintiff has made out a judicial deception claim."); *Ewing v. City of Stockton*, 588 F.3d 1218, 1228 (9th Cir. 2009) ("[Q]ualified immunity is generally unavailable in a judicial deception case.").

Accordingly, Defendants' motion for summary judgment on Mr. Thompson's Fourth Amendment claim for unlawful seizure of his firearms pursuant to a warrant that was obtained through judicial deception is **DENIED**. And, because the question of Detective Brandon's motive involves disputed issues of fact, the Court **DENIES** Defendants' motion for summary adjudication of Mr. Thompson's claim for punitive damages under federal law. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

**c. Fourteenth Amendment**

Mr. Thompson brings a Fourteenth Amendment *Devereaux* claim against Defendants for "deliberately fabricat[ing] (through omissions and misrepresentations) the results of [their] investigation." Dkt. 59 at 16.

"There is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001)) (cleaned up). "While a claim for arrest without probable cause is properly brought under the Fourth Amendment, a claim for prosecution based on falsified evidence arises under the Fourteenth Amendment." *Kim v. City of Belmont*, No. 17-CV-02563-JST, 2018 WL 4050745, at *9 (N.D. Cal. Aug. 23, 2018) (cleaned up).

To plead a claim under *Devereaux*, Mr. Thompson must: (1) identify the allegedly fabricated evidence; and (2) state facts showing that the fabrication was deliberate. *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Mr. Thompson "can prove deliberate fabrication in several ways. Most basically, [he] can produce direct evidence of deliberate fabrication. Alternatively, [he] can produce circumstantial evidence related to a defendant's motive."

*Caldwell*, 889 F.3d at 1112 (cleaned up). "[T]o prove a fabrication claim using circumstantial evidence," Mr. Thompson must

> support at least one of the following two propositions: (1) defendants continued their investigation despite the fact that they knew or should have known that the plaintiff was innocent; or (2) defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

*Id*. (cleaned up). Mr. Thompson proceeds on the first theory, claiming that Defendants pursued him despite knowing or having reason to know that he was innocent.

Based on the firearms and marijuana seized at 11720 Casa Linda Court in November 2018, the Alameda County District Attorney's Office charged Mr. Thompson with felony possession of an assault weapon in violation of California Penal Code § 30605(a) and misdemeanor cultivation of marijuana in violation of California Health and Safety Code § 11358(c) in January 2019. Dkt. 53-7 at 5. On December 13, 2022, the District Attorney dismissed the charges against Mr. Thompson for insufficient evidence. *Id*. at 11. As to the gun charge, Mr. Thompson does not argue that Defendants fabricated evidence. As to the marijuana charge, Mr. Thompson argues that Defendants knew or should have known that he was innocent of cultivating "more than six living cannabis plants[.]" Cal. Health and Safety Code § 11358(c).

In the warrant application for Mr. Thompson's arrest, Detective Moncada swears that "[t]he Marijuana was being grown in plain view within the property lines of 11720 Casa Linda Court . . . in violation of the Dublin Municipal Code" and that, "[i]n the backyard of the residence three large Marijuana plants were found inside a partially enclosed outdoor greenhouse." Dkt. No. 53-7 at 6. Detective Moncada knew, based on his execution of the November 2018 search warrant, that the only marijuana plants found in the Thompsons's backyard were the three in the greenhouse. Dkt. 53-3 ¶¶ 9, 13. Though his affidavit accurately reports the number and location of plants found in November 2018, Detective Moncada omitted from the arrest warrant that California law permits the cultivation of "not more than six living cannabis plants" "inside an accessory structure to a private residence located upon the grounds of a private residence that is fully enclosed and secure." Cal. Health & Safety Code § 11362.1(a)(3); Cal. Health & Safety

Code § 11362.2(b)(2).

Detective Moncada's omission of applicable California law is insufficient to establish a *Devereaux* claim because "withholding exculpatory evidence cannot in itself support a deliberate-fabrication-of-evidence claim. Deliberate fabrication, in other words, must mean something more than a mere omission." *O'Doan v. Sanford*, 991 F.3d 1027, 1045 (9th Cir. 2021) (citing *Devereaux*, 263 F.3d at 1079) (cleaned up). Because Mr. Thompson has failed to identify any misrepresentation aside from Detective Moncada's omission in the arrest warrant, his *Devereaux* claim as to Detective Moncada fails.

Mr. Thompson seems to argue that Detective Brandon's misrepresentations in his affidavit to the search warrant application constitute falsified evidence for the purposes of his *Devereaux* claim. Though Detective Brandon's misrepresentations justified the search of 11720 Casa Linda Court and the seizure of Mr. Thompson's firearms, none of those statements substantiated Mr. Thompson's arrest. As discussed above, Detective Brandon neither authored nor reviewed the declaration in support of Mr. Thompson's arrest, and the arrest warrant application does not contain any of Detective Brandon's misstatements. Dkt. 53-7 at 5-9. In other words, no reasonable jury could find that Detective Brandon's misrepresentations served as the basis for Mr. Thompson's arrest.

Accordingly, Defendants' motion for summary judgment of Mr. Thompson's Fourteenth Amendment *Devereaux* claim for falsification of evidence is **GRANTED**.

### 2. State Law Claims

Finally, Defendants move for summary judgment of Mr. Thompson's state law claims for intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and negligence. Because Mr. Thompson failed to oppose summary judgment of his standalone negligence claim, Dkt. 59 at 16-17, this claim is **DISMISSED with prejudice** as abandoned. *Shakur*, 514 F.3d at 892 (claims not raised in opposition to summary judgment are deemed abandoned).

To establish a claim for intentional infliction of emotional distress, Mr. Thompson must show: (1) outrageous conduct by Defendants; (2) that Defendants intended to cause or recklessly

disregarded the probability of causing emotional distress; (3) that Mr. Thompson suffered severe or extreme emotional distress; and (4) actual and proximate causation of emotional distress by Defendants' outrageous conduct. *Nghiem v. Santa Clara Univ.*, 710 F. Supp. 3d 748, 754–55 (N.D. Cal. 2024) (citing *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 160 (2014)). To prevail on a claim for negligent infliction of emotional distress, Mr. Thompson must establish that: (1) Defendants were negligent; (2) Mr. Thompson suffered serious emotional distress; and (3) Defendants' negligence was a substantial factor in causing Mr. Thompson's serious emotional distress. *Id.* at 755.

Defendants move for summary judgment on Mr. Thompson's emotional distress claims on the grounds that "[n]one of the alleged conduct rises to the requisite level" of extreme and outrageous conduct and "[t]here was no alleged fabrication." Dkt. 53 at 29-30. But Detective Brandon's alleged judicial deception does indeed qualify as extreme and outrageous conduct that recklessly disregarded the probability of causing Mr. Thompson emotional distress. *See, e.g.*, *King v. City of Sacramento*, No. 2:20-CV-01326-KJM-DB, 2022 WL 4472883, at *7 (E.D. Cal. Sept. 26, 2022) (denying summary judgment of IIED claim because there remained "genuine factual disputes bearing directly on whether there was probable cause supporting [the plaintiff's] arrest."); *Black v. City of Blythe*, No. EDCV211672JGBSPX, 2022 WL 2037124, at *6 (C.D. Cal. May 5, 2022) (ruling that the submission of false testimony to procure an arrest warrant was sufficiently extreme and outrageous conduct). And genuine disputes of material fact remain as to the alleged fabrication underlying Mr. Thompson's judicial deception claim. Accordingly, Defendants' motion for summary judgment on Mr. Thompson's IIED and NIED claims is **DENIED**. For the same reasons, Defendants' motion for summary judgment on Mr. Thompson's claim for punitive damages is **DENIED**.

## III. CONCLUSION

For the reasons stated, the Court **GRANTS** Mr. Thompson's motions to augment and supplement the record. On summary judgment, the Court **GRANTS** Defendants' motion as to Mr. Thompson's claims against the Entity Defendants, Second Amendment claims, Fourth Amendment *Monell* claim, Fourth Amendment wrongful arrest claim, Fifth Amendment claim,

Fourteenth Amendment *Devereaux* claim for falsification of evidence, and negligence claim.

Defendants' motion for summary judgment of Mr. Thompson's Fourth Amendment claim for unlawful seizure of his firearms pursuant to a warrant that was allegedly obtained through judicial deception is **DENIED** because Mr. Thompson has demonstrated that Detective Brandon misrepresented material facts in his affidavit to the search warrant application, and that the search warrant would not have issued but for Detective Brandon's misrepresentations. Defendants' motion for summary judgment of Mr. Thompson's IIED, NIED, and punitive damages claims are also **DENIED**.

A Case Management Conference is set for **Tuesday, August 18, 2026**. A joint case management statement is due one week in advance of the conference. Trial is set for **October 5, 2026**, at 8:30 AM. An in-person pre-trial conference is set for **September 24, 2026**, at 1:30 PM.

**IT IS SO ORDERED.**

Dated: July 23, 2026

AJAY KRISHNAN
United States Magistrate Judge